Filed 4/2/24  P. v. Hendrix CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOSEPH HENDRIX,<br><br>  Defendant and Appellant. | F086169<br><br>(Super. Ct. No. BF140718B)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Petitioner Joseph Hendrix petitioned the trial court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his convictions for second degree murder and attempted murder.  The court granted the petition, vacated the murder and attempted murder convictions, and resentenced petitioner on the remaining counts.

On appeal, petitioner contends relief under section 1172.6 entitled him to a full resentencing, including the ameliorative benefits of Assembly Bill No. 333 (2021–2022 Reg. Sess.), statutes 2021, chapter 699 (Assembly Bill No. 333).  We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

" 'On February 16, 2012, . . . [Samuel Xavier] Bryant and [petitioner] sought out Jacob Ramirez, who lived in the apartment below the one that Bryant shared with his mother.  Bryant was a juvenile and [petitioner] was his uncle.  Both Bryant and [petitioner] were members of the West Side Crips.

" 'During their search, Bryant and [petitioner] aggressively questioned Ramirez's friends and family as to his whereabouts.  Eventually, a friend of Ramirez's mother, [Manuel G.[2]], went into the apartment to find him.  Ramirez went outside, and shortly thereafter, [Manuel] saw the three men engaged in a fistfight.  During the course of the fight, Bryant was knocked down and broke his jaw, while Bryant's mother, who was also on the scene, was knocked to the ground as well.

" 'At that time, [Manuel] stepped in front of Ramirez and pushed him away from the fight.  As he did so, however, Bryant fired several shots in their direction.  Ramirez's mother testified that Bryant continued to shoot at Ramirez as Ramirez crawled on the ground.  Of the shell casings recovered from the scene, one had struck the occupied apartment that

---

[1] Undesignated statutory references are to the Penal Code.  Former section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)  We refer to the current section 1172.6 in this opinion.

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names.  No disrespect is intended.

Ramirez lived in, one had wounded [Manuel], and another had struck Ramirez in the chest. Ramirez died from the gunshot wound on April 7, 2012.

" 'When interviewed by the police, Bryant stated that the dispute with Ramirez stemmed from a marijuana purchase Bryant had made from Ramirez. Bryant stated that he had purchased $10 of marijuana from Ramirez, but had sought a refund. Bryant was subsequently charged in the shooting and [petitioner] was charged as an accomplice.' [(*People v. Bryant, et al.* (Dec. 12, 2014, F066725) [nonpub. opn.] (*Bryant*).)]

"Following a jury trial, petitioner was found guilty of 'second degree murder (count 1; § 187, subd. (a)), attempted murder (count 2; §§ 664/187, subd. (a)), two counts of assault with a semiautomatic firearm (counts 3 & 4; § 245[,] subd. (b)), discharging a firearm at an inhabited dwelling (count 5; § 246), and active participation in a criminal street gang (count 6; § 186.22, subd. (a)). Enhancements under section 12022.53, subdivisions (d) and (e)(1) applied to counts 1 and 2; enhancements under sections 12022.7 and 186.22, subdivision (b)(1) applied to counts 2, 3, and 4; an enhancement under [section] 12022.5, subdivision (a) applied to counts 3 and 4; and an enhancement under section 12022.53, subdivisions (c) and (e)(1) applied to count 5.' (*Bryant*, *supra*, F066725.)

"The trial court sentenced petitioner on count 1 to a term of 15 years to life, plus a term of 25 years to life for the firearm enhancement; on count 2 to a consecutive term of seven years, plus a term of 25 years to life for the firearm enhancement; and on count 5 to a concurrent term of 15 years to life. Sentence on the remaining counts and enhancements was imposed and stayed. (§ 654; Cal. Rules of Court, rule 4.447.)" (*People v. Hendrix* (Apr. 27, 2022, F081939) [nonpub. opn.], fn. omitted (*Hendrix*).)

On February 14, 2019, petitioner filed a petition for resentencing on his murder conviction pursuant to section 1172.6. The trial court denied the petition on the ground petitioner was a major participant in the underlying felony and acted with reckless indifference to human life. On appeal, we reversed the denial of the petition and

3.

remanded with directions to issue an order to show cause and to conduct further proceedings as required under section 1172.6, subdivision (d). We also noted that petitioner had not petitioned for resentencing on his conviction for attempted murder but could amend his petition on remand to seek such relief. (*Hendrix*, *supra*, F081939.)

On remand, petitioner amended his petition to include his conviction for attempted murder. The court conducted a hearing and determined the People had not proved beyond a reasonable doubt that petitioner had committed murder and attempted murder under currently valid law. Accordingly, the court vacated petitioner's convictions on counts 1 and 2.

At the sentencing hearing, defense counsel urged the court to consider the effect of Assembly Bill No. 333 on petitioner's sentence. The prosecutor argued Assembly Bill No. 333 was outside the scope of petitioner's resentencing pursuant to section 1172.6, and could not properly be considered unless and until this court directed the trial court to strike the gang enhancements. The court stated that Assembly Bill No. 333 would not have affected the outcome of petitioner's trial as to the remaining counts.

The court then sentenced petitioner on the remaining counts. On count 5, the court sentenced petitioner to an indeterminate term of 15 years to life. Sentence on the associated gang-related firearm enhancement was imposed and stayed pursuant to California Rules of Court, rule 4.447. On count 3, the court sentenced petitioner to a consecutive middle-term sentence of six years, plus an additional 10 years for the gang enhancement. Sentence on the remaining enhancements to count 3 was imposed and stayed pursuant to California Rules of Court, rule 4.447. Sentence on counts 4 and 6 was imposed and stayed pursuant to section 654.

## DISCUSSION

### I.       Section 1172.6 Procedure

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)  Senate Bill No. 1437 also added former section 1170.95, now renumbered as section 1172.6, which provides a procedure for persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, [or] attempted murder under the natural and probable consequences doctrine" to seek vacatur of the conviction and resentencing.  (§ 1172.6, subd. (a); accord, *People v. Gentile* (2020) 10 Cal.5th 830, 853 (*Gentile*).)

Upon receipt of such petition, the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subds. (a)–(c); accord, *Strong*, *supra*, 13 Cal.5th at p. 708.)  If the trial court determines the petitioner has met his or her prima facie burden, the trial court must issue an order to show cause and hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1); see *id*., subd. (c).)  "If the prosecution fails to sustain its burden of proof [at the hearing], the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Id.*, subd. (d)(3).)

## II.    Assembly Bill No. 333

Effective January 1, 2022, Assembly Bill No. 333 amended the language of section 186.22 to modify the showing necessary to prove gang offenses and gang enhancements.  (Stats. 2021, ch. 669, § 3.)  For example, Assembly Bill No. 333 narrowed the definition of " 'criminal street gang' " (Stats. 2021, ch. 699, § 3; see § 186.22, subd. (f)), modified the " 'pattern of criminal gang activity' " element of the gang enhancement (Stats. 2021, ch. 699, § 3; see § 186.22, subd. (e)), and clarified that to "benefit, promote, further, or assist" a gang "means to provide a common benefit to members of a gang where the common benefit is more than reputational" (Stats. 2021, ch. 699, § 3; see § 186.22, subd. (g)).  These amendments also affect the gang-related firearm enhancement pursuant to section 12022.53, subdivision (e)(1), which requires a showing that the defendant violated subdivision (b) of section 186.22.  (§ 12022.53, subd. (e)(1)(A).)

## III.    Assembly Bill No. 333 Applies Retroactively to the Resentencing

The parties agree, as do we, that Assembly Bill No. 333's amendments to section 186.22 apply retroactively to all nonfinal judgments.  (*People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207.)  The parties disagree, however, as to whether the trial court's resentencing of petitioner pursuant to section 1172.6 rendered his once-final judgment nonfinal for purposes of retroactive application of ameliorative changes in law, such as Assembly Bill No. 333.[3]

---

[3] The People argue petitioner's claim regarding the retroactive application of Assembly Bill No. 333 is forfeited.  Although petitioner raised Assembly Bill No. 333 below, the People point out that he did not expressly seek reversal of the gang conviction or vacatur of the true findings on the gang allegations.  We acknowledge that petitioner's argument regarding the applicability of Assembly Bill No. 333 was somewhat imprecise.  However, in the trial court, the People argued it would be improper for the trial court to strike the gang conviction and gang allegations pursuant to Assembly Bill No. 333 without direction from this court.  The court "accept[ed] the verdict as received by the jury, including all of the convictions for which [petitioner] was found guilty," on the ground there was "nothing to suggest that the outcome could have been identical [*sic*] if

## A. *People v. Padilla*

We begin our analysis with *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*), a case on which both parties rely. *Padilla* involved Proposition 57 (the Public Safety and Rehabilitation Act of 2016) (Proposition 57), which "amended the law governing the punishment of juvenile offenses in adult criminal court by requiring hearings to determine whether the offenses should instead be heard in juvenile court." (*Padilla*, at p. 158.) By the time *Padilla* was decided, it was well settled that Proposition 57 applied retroactively to all nonfinal judgments. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 309.) As in the instant case, however, the parties in *Padilla* disputed whether the defendant's judgment remained final following a successful collateral attack that resulted in vacatur of his once-final sentence. The high court ultimately determined that vacatur of the sentence rendered the judgment nonfinal and thus mandated the application of Proposition 57 to the defendant's case. (*Padilla*, at p. 158.)

In reaching this conclusion, the high court relied on *In re Estrada* (1965) 63 Cal.2d 740, 745, which held that laws which mitigate punishment are presumed to apply retroactively to nonfinal cases. (*Padilla*, *supra*, 13 Cal.5th at pp. 160–161.) However, the court also acknowledged that "the range of judgments affected by *Estrada* is delimited by constitutional constraints." (*Id.* at p. 160.) Specifically, separation of powers principles restrict the Legislature's ability to intervene in judicial decisionmaking once a judgment becomes final. (*Id.* at p. 161.) These concerns are not implicated when legislation is applied retroactively to nonfinal judgments. (*Id.* at p. 162.)

---

the procedure in [Assembly Bill No.] 333 was followed." On appeal, however, the People "[do] not argue that the outcome would be the same on the current record if the requirements of [Assembly Bill No.] 333 were applied." Assuming arguendo that the issue was forfeited, we will exercise our discretion to reach it in light of the foregoing posture. (*People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6.)

The court went on to explain that it was the vacatur of the defendant's sentence that rendered the judgment nonfinal and removed any " 'constitutional obstacle[s]' " to applying the *Estrada* presumption of retroactivity. (*Padilla*, *supra*, 13 Cal.5th at p. 162; see *id.* at pp. 161–170.) "When [the defendant's] sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and [the defendant] regained the right to appeal whatever new sentence was imposed. His judgment thus became nonfinal . . . ." (*Id.* at pp. 161–162.) "[O]nce a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence," and an appeal from such resentencing "is part of direct review of a nonfinal judgment, not collateral review of a final judgment." (*Id.* at p. 163.) The court emphasized: "Indeed, while collateral review is an attack on a final judgment, that is plainly not the posture here. When [the defendant's] new sentence was imposed, there was no final judgment to attack because his prior sentence had been vacated." (*Ibid.*) The court also explained: "[T]he decision we reach today 'properly rests on considerations of finality in the judicial process.' [Citation.] When a defendant's sentence has been vacated, the parties' interests in repose and finality are necessarily diminished; at that point, the countervailing interest in effectuating current legislative policy decisions may appropriately control." (*Id.* at p. 168.)

The high court also declined to adopt a rule that distinguished, for *Estrada* purposes, between cases that became nonfinal due to retrial or resentencing, and those that are " 'not yet final on initial review.' " (*Padilla*, *supra*, 13 Cal.5th at p. 162.) The court explained: "The *Estrada* presumption stems from our understanding that when the Legislature determines a lesser punishment is appropriate for a particular offense or class of people, it generally does not wish the previous, greater punishment—which it now deems 'too severe'—to apply going forward." (*Ibid.*) The court determined that "[n]othing about this presumption is undermined when a case is nonfinal because the

defendant's sentence has been vacated rather than because the initial review of the sentence has not yet concluded." (*Ibid.*)

Finally, the court briefly addressed and dispensed with the following argument from the Attorney General:

> "The Attorney General also contends that applying Proposition 57 to defendants whose sentences are vacated would be inconsistent with 'principles that generally limit the scope of subsequent modification of a judgment after initial finality.' In support, the Attorney General argues that vacatur of a defendant's sentence 'does not allow a resentencing court to consider new claims or affect any part of the judgment other than the sentence.' But the right and remedy we recognize today does not allow [the defendant] to raise claims unrelated to his sentence. The relief that applies to him is the same as what we approved in *Lara* for juveniles whose cases were pending when that measure passed: He must receive a transfer hearing in a juvenile court, where the court will decide whether criminal adjudication is appropriate . . . . Whatever potential that hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Padilla*, *supra*, 13 Cal.5th at pp. 169–170.)

### B. Analysis

A successful petition for resentencing pursuant to section 1172.6 results in vacatur of the homicide convictions, recall of the original sentence, and resentencing on any remaining counts "as if the petitioner had not previously been sentenced." (§ 1172.6, subd. (d)(1); see *id.*, subd. (d)(3).) The vacatur of the homicide convictions and recall of sentence vest the trial court with jurisdiction over the previously final judgment of conviction and sentence. (*Padilla*, *supra*, 13 Cal.5th at p. 161.) Under the reasoning of *Padilla*, these actions render the judgment nonfinal. The amendments to section 186.22 effectuated by Assembly Bill No. 333 therefore apply. (See *Padilla*, *supra*, 13 Cal.5th at p. 158.)

At least one court has reached a similar conclusion. (*People v. Trent* (2023) 96 Cal.App.5th 33, 41, rev. granted Dec. 20, 2023, S282644 (*Trent*).) The *Trent* court noted that the amendments to section 186.22 have been held to apply retroactively following

recall and resentencing pursuant to former section 1170, subdivision (d) (now renumbered as section 1172.1 and amended). (*Trent*, at pp. 41–42, citing *People v. Salgado* (2022) 82 Cal.App.5th 376 (*Salgado*).) Courts also have concluded that recall and resentencing pursuant to section 1172.6 opens the door to retroactive application of other ameliorative laws. (*Trent*, at pp. 43–44, citing *People v. Keel* (2022) 84 Cal.App.5th 546, 551 [retroactive application of Prop. 57 and Sen. Bill No. 1391 (2017–2018 Reg. Sess.), and *People v. Ramirez* (2021) 71 Cal.App.5th 970, 996 [same].)

Nonetheless, the People contend the final passage of *Padilla* – in which the high court stated its analysis did not allow the defendant "to raise claims unrelated to his sentence" – supports a conclusion that Assembly Bill No. 333 does not apply retroactively following section 1172.6 resentencing. (*Padilla*, *supra*, 13 Cal.5th at p. 169.) As stated, the high court proclaimed, "Whatever potential that [transfer] hearing may have for reducing [the defendant's] punishment (*the nonfinal part of his judgment*), it does not authorize or constitute relitigation of guilt." (*Id*. at p. 170, italics added.) The People contend this final passage suggests the high court recognized that the judgment "had both final and nonfinal parts, and only the nonfinal parts were subject to *Estrada*."

Courts of Appeal have reached different conclusions regarding the significance of this final passage in *Padilla*. In *Trent*, the court rejected the argument that *Padilla* presupposes a bifurcated judgment, only some of which may be rendered nonfinal by subsequent resentencing. The *Trent* court explained, "We believe the final paragraph of *Padilla* was intended to allay concerns that the defendant in that case would request a new adjudication of his guilt in the juvenile court itself and was not intended to divorce the court's retroactivity analysis from instances in which the retroactive relief would result in a more favorable sentence because the underlying change required reversal of a count of conviction for possible retrial." (*Trent*, *supra*, 96 Cal.App.5th at p. 43, rev. granted.)

10.

In *People v. Mitchell* (2023) 97 Cal.App.5th 1127, 1129–1130, review granted February 21, 2024, S283474 (*Mitchell*), a panel of this court considered the import of *Padilla* in a different, but related, context. There, the court determined that both the defendant's conviction and sentence became nonfinal for *Estrada* purposes following remand for a full resentencing. Thus, the court held the defendant was entitled to retroactive application of Assembly Bill No. 333, which took effect during the pendency of the defendant's resentencing proceedings. The court rejected the People's reliance on the final paragraph of *Padilla* for the proposition that "portions of a judgment may be final while other portions of a judgment may be nonfinal." (*Mitchell, supra*, 97 Cal.App.5th at p. 1139.) The court explained: "Setting aside the language from *Padilla*, our high court otherwise makes it very clear that, in criminal cases, the terms ' "judgment" ' and ' " 'sentence' " ' are generally synonymous, and there is no judgment of conviction without a sentence." (*Id.* at p. 1139, citing *People v. McKenzie* (2020) 9 Cal.5th 40, 46 (*McKenzie*); accord, *Mitchell*, at p. 1143, conc. opn. of Poochigian, A. P. J.) Accordingly, the court declined to read *Padilla* as "creating bifurcated judgments in the manner [the People] now advocate[]—especially for a criminal matter . . . that never had its sentence reduced to a final judgment." (*Mitchell*, at p. 1140.)

However, in *People v. Lopez* (2023) 93 Cal.App.5th 1110, review granted November 15, 2023, S281488[4] (*Lopez*), the court reached a different conclusion in circumstances similar to those presented in *Mitchell*. In *Lopez*, the defendant appealed for a second time after his judgment was conditionally reversed and the matter remanded for the trial court to address sentencing issues. (*Id.* at pp. 1113–1114.) The *Lopez*

---

[4] Our Supreme Court has limited review in *Lopez* to the question of whether the defendant is entitled to retroactive application of Assembly Bill No. 333 "where he appeals for a second time after his judgment was conditionally reversed and the Court of Appeal issued a limited remand to the trial court to address sentencing issues?" (*People v. Lopez* (Nov. 15, 2023, S281488) [order].)

majority held that the defendant's judgment was not final and he was entitled to the ameliorative benefits of Assembly Bill No. 333. (*Lopez*, at p. 1113.) However, because the court previously "reversed solely with respect to the sentence and directed the trial court to resentence [the] defendant, the trial court did not have jurisdiction to reconsider the gang enhancement," and Assembly Bill No. 333 "was simply irrelevant to anything the trial court had jurisdiction to do." (*Lopez*, at p. 1114.) The *Lopez* majority described *Padilla* as the "key" to deciding this issue. (*Id.* at p. 1118.) The court explained:

> "[W]hen an appellate court affirms a judgment as to guilt, reverses it as to the sentence, and orders a limited remand for resentencing [citation], ' "[t]he order of the appellate court as stated in the remittitur, 'is decisive of the character of the judgment to which the appellant is entitled.' " [Citation.] On remand, the lower court may act only within these express jurisdictional limits. [Citation.]' [Citation.] However, the point the Attorney General [in *Padilla*] was making went to whether the trial court has *jurisdiction*. Because Padilla's conviction had been affirmed and only the sentence had been vacated, the trial court did not have *jurisdiction* to readjudicate the conviction. The Supreme Court implicitly acknowledged this, but pointed out that Proposition 57 did not require readjudication of the conviction." (*Id.* at p. 1119.)

The court further stated: "We *accept* that on remand, defendant was fully entitled to the ameliorative benefits of Assembly Bill [No.] 333. However, those benefits consisted of the redefinition of a gang enhancement, *which was irrelevant to anything the trial court had jurisdiction to do.*" (*Lopez*, *supra*, 93 Cal.App.5th at p. 1119, rev. granted.)

We agree with *Trent* and *Mitchell* and decline to read too much into the dicta in *Padilla*'s final paragraph. The remainder of the court's discussion in *Padilla*, and indeed its holding, lead to the unavoidable conclusion that the amendments to section 186.22 apply to petitioner's convictions based on his resentencing. This view is consistent with *McKenzie*, which likewise holds that, for retroactivity purposes, the " 'judgment of conviction' " includes both the conviction and sentence. (*McKenzie*, *supra*, 9 Cal.5th at p. 46.)

The People also contend their nonretroactivity argument is supported by dicta in *People v. Wilson* (2023) 14 Cal.5th 839 (*Wilson*).  The defendant in *Wilson* had been sentenced to the death penalty and, in his automatic appeal, the guilt judgment was affirmed but the sentence reversed.  (*Id.* at pp. 844–845.)  Following a penalty phase retrial and reimposition of the death sentence, the defendant again appealed, arguing in relevant part that he was entitled to relief under Senate Bill No. 1437 on direct appeal, rather than through the section 1172.6 petition process.  (*Wilson*, *supra*, at pp. 868, 870.)

The high court noted that section 1172.6, subdivision (g) permits a defendant " 'whose conviction is *not final*' to 'challenge on direct appeal the validity of *that conviction*' based on changes to the murder statutes."  (*Wilson*, *supra*, 14 Cal.5th at p. 870.)  However, the question of whether that subdivision applied to the defendant was "complicated . . . by the case's procedural posture," which included a unanimous affirmance of the judgment of conviction nearly 15 years prior.  (*Ibid.*)  Based thereon, the defendant's murder conviction "would appear to have become final no later than 2009, when the time expired for seeking certiorari in the United States Supreme Court."  (*Ibid.*)  The high court also noted it had reached a similar conclusion under similar circumstances in *People v. Jackson* (1967) 67 Cal.2d 96.  There, the court had "explained that when a penalty phase judgment alone is reversed, 'the original judgment on the issue of guilt remains final during the retrial of the penalty issue and during all appellate proceedings reviewing the trial court's decision on that issue.' "  (*Wilson*, at pp. 870–871.)

Ultimately, the high court in *Wilson* declined to decide whether the defendant's conviction remained final.  Because the Attorney General had not disputed that the defendant could challenge his conviction under Senate Bill No. 1437 on appeal from his second penalty phase verdict, the court addressed the application of the bill to his conviction, ultimately concluding that "any error brought about by retroactive application

13.

of Senate Bill [No.] 1437 is harmless beyond a reasonable doubt." (*Wilson, supra*, 14 Cal.5th at p. 868.)

We find the People's reliance on *Wilson* unpersuasive. The relevant discussion in *Wilson* is dicta. The case *Wilson* relies upon, *People v. Jackson, supra*, 67 Cal.2d 96, was arguably abrogated in relevant part by *Padilla* (see *Lopez, supra*, 93 Cal.App.5th at p. 1117, fn. 3, rev. granted) and *Mckenzie*. *Padilla* holds that vacatur of the sentence renders the judgment nonfinal. (*Padilla, supra*, 13 Cal.5th at p. 158.) *Mckenzie* holds that the " 'judgment of conviction' " includes both the conviction and sentence. (*McKenzie, supra*, 9 Cal.5th at p. 46.) Together, these cases are binding on us (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455–456), and compel the conclusion that petitioner's judgment of conviction was rendered nonfinal by his successful section 1172.6 petition.

Based on the foregoing, we hold that the amendments to section 186.22 effectuated by Assembly Bill No. 333 apply retroactively to petitioner's case.

## IV.  Remedy

The parties agree on the appropriate remedy. We accept the People's concession that the evidence is insufficient to establish the elements of the substantive gang offense and gang-related allegations under the law as amended by Assembly Bill No. 333. We reverse the substantive gang offense on count 6 and vacate the gang-related allegations on counts 3 through 5. The People may retry count 6 and the gang-related allegations, if they choose. (*People v. Sek* (2022) 74 Cal.App.5th 657, 669–670.)

## DISPOSITION

Count 6 is reversed. The true findings on the following enhancements are vacated: the section 186.22, subdivision (b)(1) enhancements to counts 3 and 4 and the section 12022.53, subdivisions (c) and (e)(1) enhancement to count 5. The sentence is vacated in its entirety. The matter is remanded for further proceedings, to include a full

14.

resentencing. The People may retry count 6 and the gang-related enhancements to counts 3 through 5, if they choose.


DETJEN, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.

15.